# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**MENNONITE GENERAL HOSPITAL, INC.,**

**Plaintiff,**

**v.**

**MOLINA HEALTHCARE OF PUERTO RICO, et al.,**

**Defendants.**

**CIVIL NO. 18-1069**

## OPINION AND ORDER

This case involves the removal of a state court complaint and a subsequent motion to remand. (Docket Nos. 1; 13). Mennonite General Hospital, Inc. ("Plaintiff") sued Molina Healthcare of Puerto Rico, Inc. ("Molina"), MMM Healthcare, LLC ("MMM"), and MSO of Puerto Rico, Inc. ("MSO") (collectively "Defendants") in Puerto Rico state court, requesting injunctive and monetary relief for the denial of payment of invoiced medical services. (Docket No. 1-4 at 7-8). MMM and MSO removed to federal court on the basis of federal question jurisdiction, or in the alternative, on the basis of the federal officer removal statute, and Molina consented. (Docket Nos. 1; 7). Plaintiff moved to remand, arguing that their case only involved claims under state law. (Docket No. 13). MMM and MSO opposed the motion and Molina moved to join the opposition. (Docket Nos. 32; 33). For the reasons below, Plaintiff's motion to remand is **GRANTED**.

**I.    Factual Background[1]**

---

[1] The Court notes that while Plaintiff's complaint is silent on the matter, its motion for remand states that the case only involves treatment and services provided by Plaintiff to Medicaid patients. (Docket No. 13 at 4). This case, Plaintiff explains, "has nothing to do with Medicare patients." Id. As such, the Court's analysis focuses solely on claims under Medicaid.

Civil No. 18-1069

This action stems from alleged violations of Puerto Rico Law 5-2014 ("Law 5"), an amendment to the Puerto Rico Health Insurance Code. (Docket No. 1-4). Plaintiff provides healthcare and hospitalization services to institutions serving Medicaid patients throughout Puerto Rico and bills various insurance companies for those services. (Docket No. 1-4 ¶ 5). One of the companies is Defendant MMM, a Puerto Rico managed care organization ("MCO") with the federal centers for Medicare and Medicaid services ("CMS"). (Docket Nos. 1 at 2 ¶ 2; 1-4 ¶ 13). Defendant MSO provides MMM with "utilization management" and quality assurance services, administers MMM's provider network, and reviews Plaintiff's determinations as to inpatient admission through a procedure known as "utilization review." (Docket No. 1 at 2 ¶ 5). Defendant Molina, an MCO that administers healthcare services for the Medicaid program in Puerto Rico, is another such insurance company. (Docket Nos. 1-4 ¶ 7; 7 ¶ 2). Plaintiff alleges that Defendants violated Law 5 because they denied payment for certain claims on the basis of clinical guidelines, even though those claims had medical recommendations based on medical need. (Docket No. 1-4 at 5-6 ¶¶ 22-26).

**II.  Discussion**

"Under our dual-sovereign system, the plaintiff is the 'master to decide what law he will rely upon.'" Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999) (quoting Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)). The plaintiff may file suit in state court, and it is the plaintiff who "has the prerogative to rely on state law alone although both federal and state law may provide a cause of action." Id. (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). The removal statute, however, permits a defendant to remove a state court case to federal court if the defendant is able to show it could have initially been brought in federal court. See 28 U.S.C. §§ 1441(a) & 1446(a). With that said, the removing party bears the burden of proving that federal jurisdiction exists; the removal statute should be strictly interpreted and any doubts construed against the party seeking removal. See, e.g., Danca, 185 F.3d at 4 (citations omitted).

Civil No. 18-1069

Defendants here contend that federal jurisdiction exists and raise two arguments in support. (Docket No. 1 at 4, 8). First, they posit that there is a substantial enough federal issue buried within the complaint that federal question jurisdiction exists and second, that they are "acting under" federal law for the purposes of the federal officer removal statute. (Docket No. 1 at 5 ¶ 21; 8 ¶ 30). The Court addresses each of these arguments in turn.

### A. Medicaid and the Puerto Rico Health Insurance Code

To assess the extent to which Plaintiff's claim arises under federal law, an overview of the relevant portion of the Medicaid framework and Puerto Rico's specific approach to Medicaid is necessary.

Medicaid is a federal-state partnership program intended to provide medical services to the poor. See 42 U.S.C. §§ 1396–1396v; Arkansas Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 275 (2006) (describing the federal/state Medicaid partnership as "cooperative"). Under the Medicaid framework, the federal government sets certain overarching standards for the program and provides funds to states that choose to participate. See 42 U.S.C. §§ 1396–1396v. A participating state creates a plan—in accordance with federal statues and regulations—that enumerates standards for eligibility and the types of medical assistance it will provide. See generally, 42 U.S.C. § 1396a(a); see also Montana v. Abbot Labs., 266 F. Supp. 2d 250, 253 (D. Mass. 2003).

The Medicaid Act "confers broad discretion on the States to adopt standards for determining the extent of medical assistance" offered in their Medicaid programs. Beal v. Doe, 432 U.S. 438, 444 (1977). Medicaid regulations explicitly allow states to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d).

To qualify for federal assistance, a state must submit for and receive approval from the Secretary for its "plan for medical assistance." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502

3

Civil No. 18-1069

(1990) (quoting 42 U.S.C. § 1396a(a)). The plan must "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives [of the Medicaid Act]." 42 U.S.C. § 1396a(a)(17). The statute, however, "confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." Beal, 432 U.S. at 444; see also Alexander v. Choate, 469 U.S. 287, 303 (1985).

Puerto Rico, a state for the purposes of this analysis, uses a managed care approach to administer its Medicaid plan. Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 61 (1st Cir. 2005). Under this approach, "the state Medicaid agency contracts with [MCOs] . . . to arrange for the delivery of health care services to Medicaid patients." Id. The relevant state guidelines for Puerto Rico's Medicaid plan are found in Puerto Rico Law No. 72-1993, as amended (the "Puerto Rico Health Insurance Administrative Act"). On January 3, 2014, in response to concerns about discrepancies between services provided by health facilities and claim reimbursement by MCOs, the Commonwealth of Puerto Rico amended the Puerto Rico Health Insurance Administrative Act with Law 5. See Docket No. 30-1 at 2 (certified translation of Law 5). The relevant portion of Law 5 attempts to address issues that arose because hospitals authorized patient services in response to medical recommendations based on medical need and MCOs later denied claims for those services on the basis of standardized clinical guidelines. Id.

Law 5's statement of purpose explains that "it is the absolute duty of the State to continuously safeguard the quality of health services offered to citizens and eliminate all obstacles faced by them to achieving optimal health conditions." Id. The statement of purpose goes on to say that

> [a]lthough it is true that clinical guidelines are a tool used by insurers as a means of controlling quality to ensure that payments made to health service providers in Puerto Rico are based on quality services for patients; it is important to establish that they are

4

merely support tools for making informed decisions based on medical need. The element of medical need is the highest criteria that all doctors should use when making decisions to provide treatment to a patient. And these guidelines should never be used as the main reason to deny some sort of treatment or payment for services rendered. The medical need criteria should always be exercised by the doctor and all treatment evaluated on a case by case basis; and no insurer should prevent payment for services rendered to a patient when there is a medical need and it is based on clinical evidence that supports said determination and is appropriately documented by the physician who treated the patient; regardless of what the medical guidelines used by insurers establish.

Id. at 3.

To that end, Law 5 states "no health insurance company, insurer, health service organization or other authorized health plan provider . . . shall deny the appropriate authorization for patient hospitalization processes . . . when there is a medical recommendation based on medical need." Id. at 6.

### B. "Arising Under" Jurisdiction

In the context of an alleged federal question, the well-pleaded complaint rule dictates that a court must consider the face of the state court complaint to ascertain whether there is federal jurisdiction. Danca, 185 F.3d at 4 (citations omitted). A defense relying on federal law will not suffice. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). Generally, if a plaintiff pleads only a state law cause of action, federal question jurisdiction does not exist. A narrow exception to this rule exists in the "remarkably tangled corner of the law" that deals with federal questions embedded in state law claims. Almond v. Capital Props., Inc., 212 F.3d 20, 22 (1st Cir. 2000). In certain cases, a state law claim may involve such a substantial federal question that the federal court has jurisdiction. Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312-13 (2005). "These are cases where the issue is governed by state law, but 'a federal issue is decisive to the dispute and the federal ingredient . . . is sufficiently substantial to confer the arising under jurisdiction.'" Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc., 734 F.3d 28, 34–

35 (1st Cir. 2013) (quoting <u>One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.</u>, 716 F.3d 218, 224 (1st Cir. 2013) (alteration in original)).

To determine whether a case presents "arising under" jurisdiction, a court must engage in a "contextual inquiry" that asks whether "the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 568 U.S. 251, 258 (2013) (citing <u>Grable</u>, 545 U.S. at 314). If all four questions are answered in the affirmative, federal jurisdiction exists "because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." <u>Id.</u> (citing <u>Grable</u>, 545 U.S. at 313-14).

In this case, Plaintiff's complaint alleges only state law causes of action, so the Court's inquiry turns to whether there is "arising under" jurisdiction. Defendants contend that although Plaintiff alleges only violations of Law 5, what is actually in dispute is whether utilization review consistent with clinical guidelines can be prohibited under Medicaid. (Docket Nos. 1 at 5 ¶ 21; 32 at 2). Specifically, Defendants argue that the federal issue is "whether managed care organizations administering Medicaid and Medicare can be prohibited, as Plaintiff purports to do, from conducting utilization review and reviewing the medical necessity determinations made by hospitals, such as Mennonite, using professionally developed clinical guidelines." <u>Id.</u>

Assuming, arguendo, that the federal issue is necessarily raised, actually disputed, and not disruptive to the federal-state balance of power, a question remains as to whether it is "sufficiently 'substantial' to warrant federal jurisdiction." <u>Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.</u>, 726 F.3d 8, 13 (1st Cir. 2013) (noting that "the Supreme Court has emphasized that the 'substantiality' inquiry is wholly separate from the 'necessary' inquiry, and demands that a federal question must be not only important to the parties, but important to the federal

system"). "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as Grable separately requires." Gunn, 568 U.S. at 260. Rather, "[t]he substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." Id.

There are at least two scenarios in which a federal issue might be considered "substantial" for the purposes of "arising under" analysis. "First, an issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases." Municipality of Mayaguez, 726 F.3d at 14. "Second, a federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.'" Id. (quoting Gunn, 568 U.S. at 260).

Defendants argue that the federal issue in this case is substantial because Plaintiff's request for an injunction to prevent them from continuing to deny Plaintiff's claims "relies on an issue of law" and "does not depend on the facts, but on the directives of CMS and the Medicaid and Medicare federal framework that regulate the managed care organizations and the nation's health care system." (Docket No. 1 at 6 ¶ 24). This is the case, Defendants aver, because Plaintiff's Law 5 claim turns on the question of whether utilization review consistent with clinical guidelines (and contrary to a determination of medical necessity) can be prohibited under Medicaid. (Docket No. 32 at 2). Defendants also contend that the issue is substantial because the ruling in this case will govern other cases where a plaintiff objects under Law 5 to an MCO's use of professional guidelines in making a reimbursement determination. (Docket No. 1 at 7 ¶ 28). Finally, Defendants posit that the federal question is substantial here because "the federal government has a strong national interest in ensuring that [MCOs] administering federal funds are able to review medical necessity decisions by providers using industry standard guidelines . . . ." Id. at 6-7 ¶ 26.

Plaintiff counters that, unlike a true federal healthcare plan such as Medicare, the Medicaid program is a state healthcare plan that is partially funded by the federal government and as such, it gives states the authority to define the term "medical necessity" in relation to medical insurance coverage. (Docket No. 13 at 4). Because a state has the authority to define "medical necessity," whether MCOs can deny claims based on professional clinical guidelines is a question of state law that must be determined by consideration of the state's rules. Id. Plaintiff also avers that Defendants are concerned about the possibility of an unfavorable outcome in state court and are thus "forum-shopping" in an attempt to avoid a negative result. Id. at 11.

States are allowed considerable latitude in determining what constitutes "medical necessity." Beal v. Doe, 432 U.S. 438, 444 (1977) ("[B]road discretion [is conferred] on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act."). Here, the state's intent with respect to such determinations is explicitly laid out in Law 5's statement of purpose. Specifically, it notes that clinical guidelines are "are merely support tools for making informed decisions based on medical need." (Docket No. 30-1 at 3). It goes on to explain that such "guidelines should never be used as *the main* reason to deny some sort of treatment or payment for services rendered." Id. (emphasis added). Plaintiff's claim focuses only on the allegation that Defendants used clinical guidelines as the basis for denying claims in violation of Law 5. This is not a case where "the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases." Municipality of Mayaguez, 726 F.3d at 14. It is well established that states have "substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" Choate, 469 U.S. at 303 (quoting 42 U.S.C. § 1396a(a)(19)). Puerto Rico has exercised such discretion here.

Furthermore, while it is certainly important to ensure fair and efficient operation of the Medicaid system across the board, Puerto Rico's Law 5 impacts only Puerto Rico. The central question, whether Defendants violated Law 5, does not present a case where "the resolution of the issue has 'broader significance . . . for the Federal Government.'" Municipality of Mayaguez, 726 F.3d at 14 (quoting Gunn, 568 U.S. at 260). Plaintiff's contention that Defendants denied authorization for certain patient hospitalization processes in the face of medical recommendations based on medical need is a "'fact-bound and situation-specific' claim whose resolution is unlikely to have any impact on the development of federal law." Id. (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006)). As such, there is no substantial federal question implicated in Plaintiff's claim.

### C. Federal Officer Removal Statute

Defendants also contend that removal is proper under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. (Docket No. 1 at 8 ¶ 30). Under the statute, removal of a state court case to federal court is proper when the claim is against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). For removal under § 1442(a)(1), Defendants must show that: (1) they were acting under the direction of a federal officer; (2) a causal connection exists between their actions taken under such direction and the conduct for which Plaintiff sued; and (3) they have a colorable federal defense to Plaintiff's claims. Mesa v. California, 489 U.S. 121, 131-32 (1989).

Turning to the first requirement, the Supreme Court has made clear that while the words "acting under" are to be broadly construed, the possibilities are not "limitless." Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 147 (2007) (explaining that limits may be ascertained through consideration of the statute's "language, context, history, and purposes"); see also Holdren v. Buffalo Pumps, Inc., 614 F. Supp. 2d 129, 141 (D. Mass. 2009) (noting that this requirement is

"arguably subject to a somewhat higher showing" than the requirement of showing a colorable federal defense).

In defining the term "acting under," the Supreme Court explained that "the private person's acting under must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Watson, 551 U.S. at 152 (alteration in original) (citations and quotations omitted). "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." Id. (alteration in original). As such

> a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.

Id. at 153.

Defendants argue that because Plaintiff seeks a blanket injunction against them, and because Defendant MMM administers services under both Medicare and Medicaid, Defendant MMM is entitled to remove under § 1442(a)(1). (Docket No. 32 at 8). The complaint, Defendants explain, requests a comprehensive injunction against conducting utilization review using clinical guidelines that would impact enrollees in all of Defendants' programs, not just those enrolled in Medicaid. Id. This argument, however, is immaterial because Plaintiff's claims only involve Medicaid enrollees and any injunction would be effective only with respect to those claims. Indeed, Defendants acknowledge that Plaintiff has indicated that its claims relate only to Medicaid enrollees, but aver that Plaintiff has not stated with sufficient particularity to which enrollees the claims pertain. Id. at 8 n.3. Plaintiff, for its part, continues to state that the case involves only patients covered under Medicaid. (Docket No. 13 at 4). As explained earlier, the Court will make its analysis based on Plaintiff's explanation that the complaint covers only Medicaid patients. See supra note 1. The distinction between the two programs proves dispositive in this case.

Civil No. 18-1069

With respect to their involvement in the Medicaid program, Defendants are certainly subject to detailed federal regulations and they may even be "highly supervised and monitored." Watson, 551 U.S. at 153. But beyond that, Defendants have not shown anything to indicate that they "*assist*, or to help *carry out*, the duties or tasks of the federal superior" with respect to the Medicaid program. Id. (alteration in original); see also Administracion De Seguros De Salud De Puerto Rico v. Triple-S Salud, Inc., 212 F. Supp. 3d 283, 288 (D.P.R. 2015) (interpreting Watson and holding that government contractor insurance company was not "acting under" a federal officer for the purposes of removal under § 1442(a)(1)). Because mere compliance with federal regulations is insufficient to warrant removal pursuant to 28 U.S.C. § 1442(a)(1), and because Defendants have not established that they were in any way acting under the direction of a federal superior, removal in this case is not appropriate.

### III. Conclusion

For the reasons stated above, Plaintiff's motion to remand at Docket No. 13 is **GRANTED**. This action is hereby **REMANDED** to Commonwealth Court of First Instance, San Juan. The Clerk of Court shall immediately notify the state court of the remand order.

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of July, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge